UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS BENSON and MARCELLA BENSON,<br><br>Plaintiff,<br><br>v.<br><br>OCWEN LOAN SERVICING, LLC ET AL.,<br><br>Defendant. | No.  2:14-cv-02495-TLN-KJN<br><br>**ORDER DENYING PLAINTIFFS' EMERGENCY EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER** |

  This matter is before the Court pursuant to Thomas Benson and Marcella Benson's (collectively referred to as "Plaintiffs") application for a temporary restraining order (ECF No. 10).  The Court has carefully considered the arguments presented by Plaintiffs.  For the reasons set forth below, Plaintiffs' motion is DENIED.

  **I.**  **FACTUAL BACKGROUND**

  Plaintiffs allege as follows:  On or about February 1, 2006, Plaintiffs executed a Promissory Note and Deed of Trust in relation to a loan with Credit Corporation ("Encore") as the "lender," Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") as the "nominee" beneficiary in place of the "lender," Fidelity National Title Insurance Company as "trustee," and Plaintiffs Thomas Benson and Marcella Benson as the "borrowers."  (Compl., ECF No. 1 at ¶10.)  The Deed of Trust was recorded on or about February 9, 2006, in the official

records of San Joaquin County, California where MERS consequently designated itself as both "beneficiary" and "lienholder" in said records. (ECF No. 1 at ¶ 10.)

On or about August 8, 2008, a "Notice of Default" was recorded in San Joaquin County, stating that Plaintiffs were "in default" with regard to the subject loan, and that MERS is the "beneficiary" of the subject Deed of Trust. (ECF No. 1 at ¶ 11.)

On or about January 30, 2009, an "Assignment of Deed of Trust" was recorded in San Joaquin County, in which instrument MERS purported to "assign" all its rights, title and interest regarding the subject loan to HSBC Bank USA, N.A., as Trustee on behalf of Ace Securities Corp. Home Loan Trust and for the Registered Holders of Ace Securities Corp, Home Equity Loan Trust Series 2006-H3, Asset Backed Pass-through Certificates whose address in in care of Ocwen Loan Servicing, LLC. (ECF No. 1 at ¶ 12.)

On or about January 30, 2009, a "Notice of Trustee's Sale" was recorded in San Joaquin County, which document states that the purported "beneficiary," Mortgage Electronic Registration Systems, Inc., under said Deed of Trust, recorded February 9, 2006 as Instrument No. 2006-032215, "will proceed to auction on a specified date, the property commonly known as, 736 North Golden Avenue, Lodi, California 95240, if the defaulted amount is not brought current." (ECF No. 1 at ¶ 13.)

On or about April 22, 2014, a "Notice of Substitution of Trustee" was recorded in San Joaquin County stating that "the undersigned, HSBC Bank USA, N.A., as Trustee on behalf of Ace Securities Corp. Home Equity Loan Trust and for the registered holders of Ace Securities Corp. Home Equity Loan Trust, Series 2006-HE3, Asset Backed Pass-through Certificates, by its Servicer Ocwen Loan Servicing, LLC, is the present Beneficiary under the certain Deed of Trust dated 02/01/2006 and recorded 02/09/2006 as Instrument No. 2006-032215 of the official records of San Joaquin County, California, and does so substitute Western Progressive LLC as Trustee." (ECF No. 1 at ¶ 14.)

On or about May 1, 2014, a second "Notice of Default and Election to Sell under Deed of Trust" was recorded in San Joaquin, which states "by reason thereof, the present beneficiary under such Deed of Trust, has executed and delivered to said duly appointed Trustee, a written

2

Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such Deed of trust and all documents evidencing obligations secured thereby, and has declared and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby." (ECF No. 1 at ¶ 15.)

On or about May 12, 2014, Plaintiffs received a "Debt Validation Notice" from Defendant Western Progressive, LLC ("Western Progressive") which contained the aforementioned Default recorded on May 2014. (ECF No. 1 at ¶ 16.) In response, Plaintiffs submitted a "Qualified Written Request" to Western Progressive, LLC on or about September 13, 2014. (ECF No. 1 at ¶ 17.) During the period of September 30 to October 6, 2014, Plaintiffs received numerous responses to the request from Ocwen which included: a general response letter dated September 30, 2014, a Payment History dated September 30, 2014, and a Payoff Quote dated October 3, 2014. (ECF No. 1 at ¶ 18.)

Plaintiffs seek to retain possession of their home and allege claims for Intentional Misrepresentation, Unjust Enrichment, Civil Conspiracy, Wrongful Foreclosure, Quiet Title, as well as federal claims relating to the Truth in Lending Act ("TILA") and the Real Estate Settlement Procedures Act ("RESPA"). In doing so, Plaintiffs have asked this Court to enter a temporary restraining order to prevent the pending sale of their home.

## II. LEGAL STANDARD

Plaintiff seeks a temporary restraining order. A temporary restraining order is an extraordinary and temporary "fix" that the court may issue without notice to the adverse party if, in an affidavit or verified complaint, the movant "clearly show[s] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65(b)(1)(A). The purpose of a temporary restraining order is to preserve the status quo pending a fuller hearing. *See* Fed. R. Civ. P. 65. It is the practice of this district to construe a motion for temporary restraining order as a motion for preliminary injunction. Local Rule 231(a); *see also Aiello v. One West Bank*, No. 2:10–cv–0227–GEB–EFB, 2010 WL 406092 at *1 (E.D. Cal. Jan. 29, 2010) ("Temporary restraining orders are governed by the same standard applicable to preliminary injunctions.") (internal quotation and citations

3

omitted).

Therefore, the party requesting injunctive relief must show that "he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 20 (2008). Although pro se pleadings are liberally construed, *see Haines v. Kerner*, 404 U.S. 519, 520–21 (1972), they are not immune from the Federal Rules of Civil Procedure. *See Ghazali v. Moran*, 46 F.3d 52, 53–54 (9th Cir. 1995). The propriety of a request for injunctive relief hinges on a significant threat of irreparable injury that must be imminent in nature. *Caribbean Marine Serv. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988).

Alternatively, under the so-called sliding scale approach, as long as the plaintiff demonstrates the requisite likelihood of irreparable harm and can show that an injunction is in the public interest, a preliminary injunction may issue so long as serious questions going to the merits of the case are raised and the balance of hardships tips sharply in plaintiff's favor. *Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–36 (9th Cir. 2011) (concluding that the "serious questions" version of the sliding scale test for preliminary injunctions remains viable after *Winter*).

### III.   ANALYSIS

Because the weight of the Court's decision depends on Plaintiffs' likelihood of success, the Court addresses the merits of Plaintiffs' case first.

At the outset, the Court notes that Plaintiffs are not arguing that the foreclosure is wrongful because they are current on their mortgage payments. Instead, Plaintiffs argue that the foreclosure is wrongful due to illegalities involving whether the assignment of the beneficial interest in the Deed of Trust to Defendant HSBC Bank ("HSBC Bank") as trustee of the securitized trust is valid. Specifically, Plaintiffs assert that Defendant MERS who recorded the "Assignment of Deed of Trust": (1) was acting as a nominee for the originator of the loan and could not do so because the originator (Encore Credit Corporation) had ceased to exist two years prior to the assignment; (2) MERS attempted an assignment to the securitized trust long after the

last legally allowable date it could accept the transfer of any loans, according to the trust's own agreements and representations it made to investors and any regulating state and/or federal government agencies; and (3) the attempted transfer bypassed other entities that were required to purchase and then sell the loan, thus creating a defect in the title. (ECF No. 10 at 8–9.) The Court addresses each of these contentions separately below.

As to Plaintiffs' first assertion, that MERS could not act as nominee, Plaintiffs cite to cases in both Texas and Nebraska in support of this contention. However, the Court finds that the case law in California is inapposite. In *Gomes v. Countrywide Home Loans, Inc.*, 192 Cal. App. 4th 1149, 1151 (2011) ("Gomes"), the court explained that:

> MERS is a private corporation that administers the MERS System, a national electronic registry that tracks the transfer of ownership interests and servicing rights in mortgage loans. Through the MERS System, MERS becomes the mortgagee of record for participating members through assignment of the members' interests to MERS. MERS is listed as the grantee in the official records maintained at county register of deeds offices. The lenders retain the promissory notes, as well as the servicing rights to the mortgages. The lenders can then sell these interests to investors without having to record the transaction in the public record. MERS is compensated for its services through fees charged to participating MERS members.

*Id.* at 1151 (internal quotations omitted). Thus, the Forth District Court of Appeals rejected the argument presented by Plaintffs. *Id.*; *see also Jenkins v. JPMorgan Chase Bank, N.A.* 216 Cal. App. 4th 497, 511 (2013) ("California courts have refused to delay the nonjudicial foreclosure process by allowing trustor-debtors to pursue preemptive judicial actions to challenge the right, power, and authority of a foreclosing 'beneficiary' or beneficiary's 'agent' to initiate and pursue foreclosure."). Moreover, the Court notes that the Deed of Trust signed by Plaintiffs and attached to their Complaint states: "[t]he beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS." (ECF No. 1 at 108.)   Plaintiffs have not presented any arguments that would support that MERS was divested of its ability to transfer such interest to the Lender's (Encore Credit Corporation) successors and assigns. Thus, the Court is unconvinced that Plaintiffs can succeed on this ground.

As to Plaintiffs' second argument concerning defects in the securitization of the loan, this argument is also a nonstarter. The majority of California courts have found that arguments dealing with the legality of a loan's securitization will not support a claim in which a Plaintiff in default challenges the validity of a foreclosure. *See Patel v. Mortgage Elec. Registration Sys., Inc.*, No. 4:13-CV-1874 KAW, 2013 WL 4029277, at *4 (N.D. Cal. Aug. 6, 2013) (finding that the transfer of the Note and the beneficial interest through the securitization process does not constitute a sale of the Property, and therefore, there is no requirement that it be recorded); *McGough v. Wells Fargo Bank, N.A.*, No. C12–0050 TEH, 2012 WL 2277931, at *4 (N.D. Cal. June 18, 2012) ("Theories that securitization undermines the lender's right to foreclose on a property have been rejected by the courts."); *Sami v. Wells Fargo Bank, et al.*, No. 12–00108, 2012 WL 967051 at *4–*6 (N.D. Cal. March 21, 2012) (rejecting arguments that securitization invalidates standing to foreclose and finding that a borrower has no standing to challenge violations of the terms of a Pooling and Service Agreement ("PSA") as improper securitization); *Wadhwa v. Aurora Loan Servs., LLC*, No. 11–1784, 2011 WL 2681483 at *4 (E.D. Cal. July 8, 2011) (rejecting argument that securitization, and assignment of the note to a REMIC invalidates interests other than the borrower's); *Hafiz v. Greenpoint Mortgage Funding, Inc.*, 652 F. Supp. 2d 1039, 1043 (N.D. Cal. 2009) (rejecting argument that defendants' power of sale is lost by assignment of original promissory note to a trust pool); *Benham v. Aurora Loan Servs.*, No. 09–2059, 2009 WL 2880232, at *3 (N.D. Cal. Sept. 1, 2009) (rejecting same argument regarding trust pool); *Reyes v. GMAC Mortgage LLC*, No. 11–0100, 2011 WL 1322775, at *2 (D. Nev. Apr. 5, 2011) ("securitization of a loan does not in fact alter or affect the legal beneficiary's standing to enforce the deed of trust"); *see also Lane v. Vitek Real Estate Indus. Group*, 713 F. Supp. 2d 1092, 1099 (E.D. Cal. 2010) (noting that "[t]here is no stated requirement in California's non-judicial foreclosure scheme that requires a beneficial interest in the Note to foreclose. Rather, the statute broadly allows a trustee, mortgagee, beneficiary, or any of their agents to initiate non-judicial foreclosure").

Finally, as to Plaintiffs' third contention—that the attempted transfer bypassed other entities that were required to purchase then sell the loan and thus created a defect in the title—this

6

argument has also been rejected by most California courts. As stated above, the *Gomes* court found that the MERS System allows lenders to sell these interests to investors without having to record the transaction in the public record. *Gomes*, 192 Cal. App. 4th at 1151. Thus, this argument also fails, and Plaintiffs have not shown a likelihood of success. Because Plaintiffs cannot meet the first prong, the Court need not address the rest of the prongs. *See Winter*, 555 U.S. at 20; *Alliance for the Wild Rockies*, 632 F.3d at 1135 (*Winter* requires a plaintiff to make a showing on all on the *Winter* factors).

### IV. CONCLUSION

For the reasons stated above, the Court hereby DENIES Plaintiffs' application for a temporary restraining order (ECF No. 10).

IT IS SO ORDERED.

Date: December 1, 2014

Troy L. Nunley
United States District Judge